## SIKES vs. THE STATE.

1. CRIMINAL LAW:  *Illegal solemnization of marriage between infants.*
   It is no excuse or justification to one who solemnizes a marriage between minors, without the consent of the parent or guardian, that the parties to the marriage informed him that they were of age; he acts at his peril, and must ascertain the facts.

2. ――――.  *Indictment, requisites of.*
   An indictment against a person who solemnizes a marriage between infants, without the consent of the parent or guardian, must allege the existence of a parent or guardian in this State; but the omission to follow the allegation of the age of the parties with the word "years," will not vitiate.

3. ――――.  *Penalty for illegal solemnization of marriage between minors.*
   Section 1590, of Gantt's Digest, fixes the penalty for solemnizing a marriage between minors without the consent of the parent or guardian.

APPEAL from *Benton* Circuit Court.

Hon. J. M. PITTMAN, Circuit Judge.

By appellant.

In support of demurrer:

*First*—The indictment fails to charge that he was a regularly ordained minister of the gospel of any religious denomination authorized to solemnize marriage. Gantt's Digest, secs. 4178 and 4179; also *State* v. *Willis*, 9 Ark, p. 196.

*Second*—The indictment omits the word "years," in describing the age of the female married. 6 Ark., p. 165. Omits to state that her parents were residents of this State. Gantt's Digest, 4186.

The court erred in permitting evidence on any other point than defendant's authority to perform the ceremony. Gantt's Digest, sec. 1588; also sec. 4179, acts of 1873, amendment to ch. 109 of Gould.

Due diligence was exercised, and the minister was not responsible for mistake in ages.

There was error in instructions regarding the penalty. Gantt's Digest, sec. 1590.

*Attorney General Hughes* for State.

Cited Gantt's Digest, secs. 4186, 1588, 1590; 9 Ark., 196: *Smyth* v. *State*, 13 Ark., 696.

ENGLISH, CH. J.:

There were two counts in the indictment in this case.

The first count charged that "the defendant, J. W. Sikes, being a minister of the Gospel, in said county (of Benton), on the 10th day of March, 1875, unlawfully did solemnize a marriage contract between one Hayden Looney and Cora A. Taliaferro. She, the said Cora A. Taliaferro, then and there being a minor over the age of *seventeen* and under the age of *eighteen*,

*Vol. xxx.—32.*

without first obtaining the consent of the parents of her the said Cora A. Taliaferro, the parents of her the said Cora A. Taliaferro then and there being residents of the State of Arkansas, against the peace," etc.

The second count charged that "the said J. W. Sikes, in said county, on the 10th day of March, 1875, he, the said J. W. Sikes, then and there being a minister of the Gospel, unlawfully did perform a marriage ceremony between one Hayden Looney and Cora A. Taliaferro, he, the said Hayden Looney, then and there being a male person under the age of twenty-one years and over the age of seventeen years, and the said Cora A. Taliaferro then and there being a female over the age of seventeen years and under the age of eighteen years, without first obtaining the consent in person, or in writing, of the parents of them the said Hayden Looney and Cora A. Taliaferro, against the peace," etc.

The defendant demurred to the indictment "because the facts set forth in it do not constitute a public offense against the laws of the State," etc.

The court, as stated in the record, overruled the demurrer, holding the indictment to be bad under section 1590, of Gantt's Digest, as insisted by defendant, but good under section 1588, of the Digest.

The defendant was then tried upon·the plea of not guilty, convicted, fined $100, filed a motion for a new trial, and also a motion in arrest of judgment, which were overruled, and he took a bill of exceptions and appealed.

The only specific objection taken to the first count of the indictment, in the brief filed for appellant, is that the word *years* is omitted immediately after the word *seventeen*, and again after the word *eighteen*. The clause complained of is this : " She, the said Cora A., etc., then and there being a minor over the age of *seventeen* and under the age of *eighteen*." No doubt but that the

clause would have been more accurate, and better composition as well as pleading, if the word *years* had followed both the words *seventeen* and *eighteen,* but the omission was hardly prejudicial to any substantial rights of the appellant on the merits. (Gantt's Digest, p. 404.) He, his counsel, the court and jury, must all have understood that the omitted word was plainly implied after the words *seventeen* and *eighteen,* preceded by the words, as the one was, *"over the age of,"* and the other *"under the age of."*

The second count in the indictment is bad because it did not aver that the parties married by appellant had parents or guardians living in this State. If the parties be of the age to contract marriage, that is, if the male be of the full age of seventeen years, and the female of the full age of fourteen years, and have neither parent nor guardian, living in this State, it is no offense for a minister, priest, or civil magistrate, to marry them without obtaining the consent of parents or guardian, but if the parents or guardian live in this State, such consent must be obtained in person or in writing.

The second count alleges that such consent was not obtained, but does not aver that the parents were living in the State.

Revised statutes, ch. 94, sec. 19, 20, 21 ; Gould's Digest, ch. 109, secs. 20, 21, 22; Gantt's Digest, secs. 4186–87, 1590, 1592; *State* v. *Willis,* 9 Ark., (4 Eng.) 196.

On the trial, the State proved by C. D. Taliaferro that he was the father of Cora A.; that she was over the age of seventeen and under the age of eighteen years at the time of her marriage with Hayden Looney ; that he had never given his consent, either in person or in writing, to the marriage, and that he resided in Benton county, etc.

Jane Taliaferro testified that she was the mother of Cora A., and that she was, on the 24th day of March, 1875, the time of the marriage, over seventeen and under eighteen years of age,

and that witness had never given her consent, either in person or in writing, to the marriage.

The State proved by Mr. and Mrs. Looney that they were married by appellant, in Benton county, on the 14th March, 1875, and that Mr. Looney told appellant that they were on a runaway expedition or match.

The State introduced the marriage certificate given by appellant, in which he certified that he was an ordained minister of the gospel, of the Baptist denomination; that his credentials were recorded in the clerk's office of Benton county on 1st May, 1866, and that he solemnized the rites of matrimony on the 24th March, 1875, between Hayden Looney, age twenty-one years the 1st May, 1875, and Cora A. Taliaferro, age eighteen years the 9th November, 1874, both of Benton county. Dated 25th March, 1875.

Mrs. Looney, on behalf of appellant, testified that in the evening of the 24th of March, 1875, and before the marriage, she told appellant she was eighteen years old on the 9th of March, 1874, and offered to give him a certificate to that effect. Other witnesses testified that she made such statement to appellant.

Hayden Looney also testified that before appellant saw Cora A., he told him twice that she was eighteen years old.

The appellant asked the court to instruct the jury, "That if they believed from the evidence that the defendant used proper diligence to ascertain the age of said Cora A. Taliaferro from the parties married before he performed the rites of matrimony between her and said Hayden Looney, they should find him not guilty."

Which instruction the court refused.

The court, of its own motion, after stating to the jury the material allegations of the indictment, and that it was necessary for

the State to prove them, instructed them that "If the jury find from the evidence, beyond a reasonable doubt, that the defendant solemnized the rites of matrimony between Hayden Looney and Cora A. Taliaferro, in the county of Benton, within one year before the finding of this indictment, that said Cora A. was, at that time, over the age of seventeen and under the age of eighteen years; and that defendant had not the consent, in person or in writing, of the parents or guardian, living in this State, of said Cora A., it is no excuse or justification of the act that it was without any criminal intention, or that a deception had been practiced upon defendant by a false representation that the said Cora A. was of the age of eighteen years. The violation of the statute is made a crime, regardless of the intention of the parties."

The court also instructed the jury that if they found the defendant guilty, as charged in the indictment, they would assess his fine at not less than one hundred dollars.

The jury found the appellant guilty, and assessed his fine at one hundred dollars.

The statute, under which the indictment was preferred, provides that: "Persons authorized by this act to solemnize marriage, shall not perform any marriage ceremony of any male over the age of seventeen years and under the age of twenty-one years, nor of any female over the age of fourteen years and under the age of eighteen years, without the consent, in person or in writing, of the parent or guardian of such male or female minor, if they have either parent or guardian living in this State." Gantt's Digest, sec. 4186; Gould's Digest, ch. 109, sec. 20; Revised Statutes, ch. 94, sec. 19.

"If any minister, civil officer, or priest shall marry any minor without the consent of parent or guardian, as prescribed by law [this act in the original], such person so offending shall be deemed

guilty of a misdemeanor, and, on conviction, shall be fined in any sum not less than twenty-five nor more than five hundred dollars." Gantt's Dig., sec. 1590; Gould's Dig., ch. 109, sec. 22; Rev. Stat., ch. 94, sec. 21.

The statute makes it the duty of the civil magistrate, minister or priest, previous to solemnizing any marriage, to ascertain the given or Christian names and family names of the persons applying to be married; also, their respective ages and residences, etc. Gantt's Dig., sec. 4183.

In *The State* v. *Willis*, 9 Ark., 198, Mr. Justice Scott said: "If the parents of the minor resided in the State, the defendant was bound, at his peril, to ascertain and know who they were, and that their consent had been obtained before he solemnized the marriage."

In *Smyth* v. *State*, 13 Ark., 699, Chief Justice Watkins, after quoting the above provisions of the statute, said : "The policy of the statute is to be upheld upon many grave considerations. Experience has demonstrated the necessity of fixing some period of lawful age, when the minor is to become emancipated from the duty of obedience to parental authority, and qualified to assume the responsibilities of life. Marriage by persons of immature age, are not only against public policy, because in violation of a physical law of our nature, but, because they are liable to be rashly and inconsiderately contracted, and are often disastrous in their consequences. The law, which esteems marriage as the most solemn, the most binding, and important of all contracts, does not punish the parties to it, if within the ages prescribed by the 20th section (of the marriage act) by avoiding the contract, but its policy is to discourage such marriages, and to punish those who engage in celebrating them without the consent of the parent or guardian. * * * * The minister or magistrate performing the ceremony, does so at his peril, and he

must assure himself that the consent of the parents or guardian, in one or the other modes, is in fact given. He cannot justify or excuse his agency in the violation of the law, by showing that it was without any criminal intent on his part, or by reason of a deception practiced upon him, as, for instance, it had been falsely represented that the minor was of age."

. The court below properly refused the instruction moved by appellant, because it asserts, in effect, that he exercised proper diligence to ascertain the age of the female minor by inquiry of the parties applying to be married, and was excusable in acting on their representations.

It seems, from the evidence, that he was informed by the parties that they were on a runaway match, which indicated that they were acting in disobedience to parental authority, and should have admonished him to extend his inquiry as to their ages beyond their own statements.

The instructions given by the court, of its own motion, on this point, was in harmony with the decisions above cited, made under the provisions of the statute applicable to this case.

A public offense is any act or omission for which the law has prescribed a punishment, (Gantt's Digest, p. 325) and an intention to commit an offense may be imputed to the actor from criminal negligence ; at least he is answerable in many instances for such negligence. Our law treats marriage as a civil contract, and the applicant, in undertaking to perform a marriage ceremony, was acting, not strictly as a minister of the gospel, but as a minister of the law, or *quasi* officer, for he derived his authority from the statute to perform the ceremony, and he was obliged not only to know the requirements of the law, but to conform to them carefully and without negligence. The jury had the right, however, to take into consideration, when they came to fix the measure of punishment to be inflicted upon him, the fact that he

may not have wilfully violated the law, but negligently confided in the representation of the parties applying to him to unite them in marriage, that the female had arrived at an age when she could legally disregard the will of her parents. And the statute applicable to cases like this allows the jury a large discretion, for they may fix the fine at not less than $25 nor more than $500.

But the court below charged the jury that if they found the appellant guilty they must assess his fine at not less than one hundred dollars, thereby limiting the discretion of the jury to mitigate appellant's punishment by a larger amount than that fixed by the statute applicable to the case; and they rendered their verdict for a fine of one hundred dollars, when possibly they might have fixed it at a less sum, on the facts proven, if they had been correctly instructed.

The court applied to the case section 1588 Gantt's Digest, which is part of section 3 of the act of January 21, 1873, (acts of 1873, p. 3,) and which was substituted for section 12, ch. 109, Gould's Digest, p. 761, and prescribes the penalty for the failure of a minister of the gospel or priest to have his credentials recorded before solemnizing the rites of matrimony, etc.

The previous digesters placed the various sections prescribing penalties for violations of the marriage act in their proper connections under the title "marriages," but Mr. Gantt deemed it a better classification to bring all the penal sections together in an article under the general head of Criminal Law, (p. 378), and hence they are not so readily applied, without liability to mistake, as when in their original places. The penal section applicable to this case, as above indicated, is section 1590 Gantt's Digest.

The verdict being general was good, though one count in the indictment was bad (*Brown* v. *State*, 10 Ark., 618), and hence

the court below did not err in overruling the motion in arrest of judgment. But for the error of the court in the charge to the jury in relation to the penalty, as above indicated, a new trial should have been awarded.

The judgment must be reversed, and the case remanded, with instructions to the court to sustain the demurrer to the second count of the indictment, and grant the appellant a new trial on the first count.